# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1595

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Kerry Poulack, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  October 16, 2000
Filed:  January 9, 2001

_____

Before HANSEN, MURPHY, and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

Kerry Poulack rented a truck that was stopped for a traffic violation on an interstate highway in Nebraska. A large amount of marijuana was discovered in sealed boxes in the truck, and after Poulack's pretrial motion to suppress the evidence was denied, he stipulated at trial that the quantity of marijuana in the boxes was 77.1 kilograms. The jury convicted him of possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1), and of conspiracy to distribute marijuana, in

violation of 21 U.S.C. § 846, and the district court[1] sentenced him to 210 months. Poulack appeals his conviction and his sentence. We affirm.

On February 9, 1999, Nebraska State Trooper Russell Stanczyk observed a rental truck on Interstate 80 with Arizona license plates which was driving too closely to the vehicle in front of it. He stopped the truck and motioned the driver, Charles Guarino, to come back to his patrol car. Guarino gave Stanczyk his driver license and sat in the patrol car while Stanczyk checked the license and filled out a warning ticket. Stanczyk asked Guarino where he was going. Guarino replied that he had an unsuccessful computer business and that he was in the process of moving computer equipment back to Boston with the assistance of his cousin Kerry Poulack, who was in the passenger seat of the truck.

Stanczyk's suspicions were aroused during this conversation because Guarino seemed overly friendly and nervous, initiating a conversation about hair lines and sunglasses. Guarino said that the truck had been rented in Arizona, and Stanczyk asked if he could look at the rental agreement. Guarino replied that Poulack had the contract. Stanczyk went over to the truck, where Poulack gave him the rental agreement and his driver license. Stanczyk returned to the patrol car and ran a check on Poulack's license and found that Poulack had an extensive criminal record. After Stanczyk gave Guarino both driver licenses, the rental agreement, and the warning ticket, Guarino started to leave the patrol car. Stanczyk asked if he would answer a few more questions, and the magistrate judge found that Guarino consented to do so.

In answering Stanczyk's additional questions, Guarino said that the truck was carrying computer equipment, that Poulack had rented the truck because he had been closer to the rental office, that Poulack was in control of the truck because he had

---

[1]The Honorable Richard G. Kopf, Chief United States District Judge for the District of Nebraska.

rented it, but that all the contents belonged to Guarino except for Poulack's overnight bag. At this point Stanczyk observed another trooper passing on the highway and radioed him to request his assistance. Stanczyk later testified that he did not ask Guarino if he could search the truck because he had said it was controlled by Poulack.[2] When the second trooper arrived, Stanczyk went over to the truck to talk to Poulack.

Stanczyk returned Poulack's license and rental agreement and then asked him several questions. Poulack said that he had control of the truck, that he had rented it, and that the cargo was computer equipment. Stanczyk testified that Poulack told him he could search the truck. Poulack testified to the contrary, but the magistrate judge found Stanczyk to be more credible. At Stanczyk's request, Poulack produced a key to the padlock on the back of the truck and opened the rear door. Inside were a number of taped boxes. Stanczyk picked one up and noticed that it was light for its size and alleged contents. He opened the box and found a container of marijuana under a layer of packing peanuts. Stanczyk then motioned to the other officer to arrest Poulack. After Guarino and Poulack were arrested, they were searched. Each was carrying approximately $2,000 in cash.

Before trial both Poulack and Guarino moved to suppress the marijuana on the grounds that the search had violated the Fourth Amendment. The district court granted Guarino's motion after finding that Guarino had not consented to the search and that Poulack did not have actual or apparent authority to consent for him. Poulack's motion was denied because he had consented to the search of the truck and he did not have a legitimate expectation of privacy to object to the search of boxes he said belonged to Guarino.

_____

[2]Guarino claims that Stanczyk asked him twice if he would consent to a search and that he refused both times. The magistrate judge found the trooper's testimony at the suppression hearing to be more credible than that of Guarino.

After a jury returned a guilty verdict on both counts of the indictment, Poulack unsuccessfully moved for a judgment of acquittal or a new trial. Poulack had stipulated at trial that the weight of the marijuana was 77.1 kilograms and had agreed to admission of a lab report that identified the drug and its weight. The district court found that Poulack had possessed 77.1 kilograms of marijuana and concluded that under 21 U.S.C. § 841(b)(1)(C) he was subject to a maximum sentence of 20 years. Because Poulack was a career offender, with a criminal history that included convictions for larceny, bank robbery, assault with intent to kill, and possession with intent to distribute cocaine, he was placed in criminal history category VI with an adjusted offense level of 32. See United States Sentencing Commission, Guidelines Manual, § 4B1.1 (Nov. 2000). The sentencing range was found to be 210 to 262 months, and the court sentenced him at the low point of the range.

On appeal Poulack argues that the marijuana should have been excluded because the search exceeded the permitted scope of a traffic stop, that there was insufficient evidence that he knew marijuana was in the boxes, and that he could not have possessed the marijuana when he was without standing to object to the search. He also requested and received permission to file a supplemental brief arguing that the Supreme Court decision in Apprendi v. New Jersey, 120 S. Ct. 2348 (2000), entitles him to be resentenced. He argues that the maximum sentence he faced depended upon the amount of marijuana found to be in his possession, that the amount was not charged in the indictment or determined by the jury, and that the district court sentenced him on the basis of its own finding of the amount of marijuana.

The government asserts that the marijuana was properly admitted because Poulack had consented to the search, that there was sufficient evidence that he was aware of the contents of the boxes, and that the issue of possession as an element of an offense is distinct from standing under the Fourth Amendment. It says Apprendi does not entitle Poulack to a sentence reduction because he stipulated to the amount of marijuana he was alleged to control.

-4-

An officer making a traffic stop does not violate the Fourth Amendment by asking the driver his destination and purpose, checking the license and registration, or requesting the driver to step over to the patrol car. See United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994). If the officer develops a reasonable, articulable suspicion of criminal activity beyond the reason for the traffic stop, the officer may expand the scope of the inquiry and detain the occupants of the automobile for further investigation. See United States v. Carrate, 122 F.3d 666, 668 (8th Cir. 1997). Whether the officer had reasonable suspicion to expand the scope of the stop is determined by looking at "the totality of the circumstances, in light of the officer's experience." See id. (citations and quotes omitted). Stanczyk's suspicion of illegal activity was reasonable as the circumstances unfolded. Guarino was oddly friendly and nervous, and although he claimed he was moving computer equipment from his business, Poulack had rented the truck and had control over it. Poulack had an extensive criminal record, and both men claimed that Guarino had sole possession of the boxes even though Poulack controlled the truck. The trooper had sufficient reason and justification to ask to search the truck. See United States v. Pereira-Munoz, 59 F.3d 788, 791-92 (8th Cir. 1995) (citing cases where reasonable suspicion supported a request to search).

A finding that consent to search was voluntary is reviewed for clear error. See Carrate, 122 F.3d at 670 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)). The district court did not err in finding Poulack's consent to be voluntary, considering the eleven factors identified in United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990). Poulack's age, sobriety, and criminal history support the contention that Poulack consented to the search. He was detained for a short time, was not threatened or intimidated by the officers, the officers did not make promises or misrepresentations to him, he was not under arrest when the search occurred, he was not in a secluded place, and he did not object, but stood by silently while the search took place. The marijuana was properly admitted because Stanczyk received Poulack's

-5-

voluntary consent to search after an expanded traffic stop supported by reasonable suspicion.

Poulack argues that there was no evidence to show that he knew what was in the boxes, that there was no fingerprint evidence or direct evidence that he had helped pack the boxes. Reversal for insufficiency of evidence is appropriate if the evidence viewed in the light most favorable to the government is such that a reasonable jury must have harbored a reasonable doubt that the defendant was guilty. See United States v. Martinez, 168 F.3d 1043, 1047 (8th Cir. 1999). The government may show that a defendant knowingly possessed contraband by showing constructive possession, which is "'ownership, dominion or control over the contraband itself, *or dominion over the premises in which the contraband is concealed*.'" See United States v. Brett, 872 F.2d 1365, 1369 (8th Cir. 1989) (emphasis in the original, quotes and citation omitted). There was sufficient evidence from which the jury could have found that Poulack constructively possessed the marijuana, including his undisputed control of the truck and his access to the key to the padlock on the truck. See id. (possession of key to house is sufficient to show defendant had knowing possession of drugs inside). A defendant may be found to possess illegal contraband even if he did not have Fourth Amendment standing, for standing is required to raise a constitutional challenge but does not protect an individual from prosecution. See United States v. Salvucci, 448 U.S. 83, 90 (1980).

While this appeal was pending, the Supreme Court announced its decision in Apprendi v. New Jersey, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S. Ct. 2348, 2362-63 (2000). The fact that Poulack was found to have possessed more than 50 kilograms increased the statutory maximum he faced. The statutory maximum sentence for possession with intent to distribute less than 50 kilograms of marijuana is 60 months, see 21 U.S.C. § 841 (b)(1)(D), but if a defendant is convicted of that offense and found

to possess over 50 kilograms, the statutory maximum sentence is 240 months. <u>See</u> 21 U.S.C. § 841(b)(1)(C). Since the issue of quantity was not submitted to the jury and Poulack was sentenced to 210 months, he argues that for each conviction he is entitled to be resentenced within the lower statutory maximum of 60 months.[3]

Since Poulack agreed that the quantity of marijuana he was alleged to possess was 77.1 kilograms and did not object to admission of such evidence at trial or to the court's imposing a sentence based upon its own finding of quantity, our review is for plain error. <u>See</u> <u>United States v. Page</u>, No. 99-5361, 2000 WL 1682523 at *7 (6th Cir. Nov. 9, 2000); <u>United States v. Swatzie</u>, 228 F.3d 1278, 1281 (11th Cir. 2000); <u>United States v. Garcia-Guizar</u>, No. 99-10435, 2000 WL 1346233 at *3 (9th Cir. Sept. 20, 2000); <u>United States v. Meshack</u>, 225 F.3d 556, 575 (5th Cir. 2000). In order to show he is entitled to resentencing under <u>Apprendi</u>, Poulack must prove that the failure to allege quantity in the indictment and the failure of the jury to determine quantity were erroneous, plain, and that these errors affected his substantial rights. <u>See</u> <u>United States v. Johnson</u>, 520 U.S. at 461, 466-67 (1997); <u>United States v. Olano</u>, 507 U.S. 725, 732 (1993); <u>United States v. Millard</u>, 139 F.3d 1200, 1203 (8th Cir. 1998), <u>cert. denied</u>, 525 U.S. 949 (1998). Even if plain error were shown, this court may not reverse unless the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." <u>Johnson</u>, 520 U.S. at 461 (quotes and citations omitted).

Not only did Poulack not object at trial to the allegedly defective indictment or to the failure of the jury to make a quantity determination, or at sentencing to the court's

---

[3]Since Poulack had been previously convicted of possession with intent to distribute cocaine, his maximum sentence for each count of conviction could have been 120 months under 21 U.S.C. §§ 841(b)(1)(D) and 846. In these circumstances a consecutive sentence of 240 months would not have been an <u>Apprendi</u> violation if the government had filed the necessary information before trial. <u>See</u> 21 U.S.C. § 851; <u>United States v. Aguayo-Delgado</u>, 220 F.3d 926, 934 (8th Cir. 2000), <u>cert. denied</u>, No. 00-6746, 2000 WL 1634209 (U.S. Nov. 27, 2000).

determining the amount of marijuana, but he stipulated to the quantity of marijuana he was alleged to have possessed and to admission of a lab report that identified the drug and stated its weight. The record shows that these stipulations came after his arraignment on the superseding indictment when he was informed that the weight or quantity of marijuana would determine the statutory maximum sentence and that he could face a sentence of up to 20 years for possession of 77 kilograms of marijuana.[4] With this information he had incentive to dispute the quantity of marijuana even though the amount was not alleged in the indictment. See United States v. Dailey, 918 F.2d 747, 748 (8th Cir. 1990). And he in fact did challenge the government's original quantity figure. He requested that the marijuana be reweighed without its packaging after the government lab initially estimated the weight of the marijuana to be 240 pounds. The calculation after the reweighing was 171.4 pounds (77.1 kilograms), and that was the amount in the lab report introduced into evidence and to which he

_____

[4]The arraignment transcript includes the following (Trial Tr. at 4-10.):

| | |
|---|---|
| Defense Atty.: | Judge, if I may, . . . it's my understanding the marijuana comes out to be a net weight of approximately 170-some pounds. |
| The Court: | Yes sir. |
| Defense Atty.: | That's less than one hundred kilos of marijuana. It's my understanding that is a zero to 20 offense as opposed to a five to 40 offense under 841(b), if I'm not mistaken, and I think that's important for arraignment purposes to know the specific amount and the possible penalties. |
| | . . . . |
| Prosecutor: | Right. It's my understanding, Your Honor, the weight would be 171 pounds, and I think that is probably less than a hundred kilograms. |
| Defense Atty.: | I think it's 77 kilograms, Judge. |
| | . . . . |
| | So I think provision (c) is the operative provision, if I'm not mistaken. |
| | . . . . |
| The Court: | Then let us rearraign Mr. Poulack and advise him of the proper penalties, and I will do that. Mr. Poulack, on each count of conviction, if you're convicted on each count, you could be sentenced to a period of zero to 20 years in prison . . . . Have you heard and do you understand the charges against you? |
| Defendant: | Yes. |
| The Court: | Have you heard and do you understand the penalties? |
| Defendant: | Yes. |

stipulated. (Trial Tr. at 87-92, 22-23). Because Poulack stipulated to the reduced drug quantity figure when he had knowledge that quantity was a key factor, he waived his right to a jury determination on that issue. See, e.g., United States v. Stalder, 696 F.2d 59, 62 (8th Cir. 1982); United States v. Harrison, 204 F.3d 236, 242 (D.C. Cir. 2000); United States v. Hardin, 139 F.3d 813, 816 (11th Cir. 1998).

Even if we were to assume that there was error and that the error was plain, however, it would not have affected Poulack's substantial rights. A defendant's rights are substantially affected when an error "prejudicially influenced the outcome of the district court proceedings." United States v. Aikens, 132 F.3d 452, 455 (8th Cir. 1998). Given the circumstances of this case, any error would not have prejudicially influenced the outcome of the proceedings. Given the record here, there is no reason to believe that a jury would not have made the same finding of quantity as the district court did. The large amount of marijuana found in Poulack's truck was an exhibit at trial and viewed by the jury, the government introduced a lab report showing the weight of the marijuana, at Poulack's request the marijuana was reweighed without its packaging and the report was changed accordingly to his advantage, and Poulack stipulated to that corrected weight and to the admission of the lab report. Moreover, at oral argument counsel conceded that Poulack had not challenged the district court's finding of quantity because he had no basis on which to challenge the amount.[5] Under the circumstances of this case we find no plain error in the imposition of a sentence based on the court's finding that Poulack possessed 77.1 kilograms of marijuana.

---

[5]In response to the court's question: "Could you address the fact that he didn't contest the amount?" defense counsel replied: ". . . [It] really is a non-issue. There was x amount of dope in the truck. It's a no-brainer. That's why we stipulated to the quantity. I'm not going to try to dance around that."

We conclude the district court did not commit plain error in sentencing Poulack, that any error would not have affected Poulack's substantial rights, and that <u>Apprendi v. New Jersey</u> does not require that Poulack be resentenced.

For these reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-