# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 00-1264

_____

United States of America,　　　*
　　　　　　　　　　　　　　　*
　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　*
　　　v.　　　　　　　　　　　*
　　　　　　　　　　　　　　　*
Keith Maynie, Jr.,　　　　　　　*
　　　　　　　　　　　　　　　*
　　　　　Appellant.　　　　　　*

　　　_____　　　　Appeals from the United States
　　　　　　　　　　　　　　　　District Court for the
　　　　　No. 00-1269　　　　　　Southern District of Iowa.
　　　_____

United States of America,　　　*
　　　　　　　　　　　　　　　*
　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　*
　　　v.　　　　　　　　　　　*
　　　　　　　　　　　　　　　*
Dietrick Lavon Banks,　　　　　*
　　　　　　　　　　　　　　　*
　　　　　Appellant.　　　　　　*

_____

No. 00-1271
_____

United States of America,         *
                                     *

        Appellee,         *
                                     *

    v.                   *
                                     *

Lenora Logan,         *
                                     *

        Appellant.      *

_____

Submitted:  November 30, 2000[1]
Filed:  July 30, 2001

_____

Before HANSEN, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

HANSEN, Circuit Judge.

Defendants Keith Maynie, Dietrick Banks, and Lenora Logan were each convicted of conspiracy to distribute and possess with the intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846 (1994).  The district court sentenced

_____

[1]This case was initially heard on October 18, 2000.  Following oral argument, the court requested supplemental briefing on the effect and impact of Apprendi v. New Jersey, 530 U.S. 466 (2000), on defendants' appeals.  Supplemental briefing was complete on November 30, 2000, and the case is deemed submitted on that date.

each defendant to life in prison. On appeal, defendants challenge both their convictions and sentences. We affirm all three defendants' convictions, but because drug quantity was not alleged in the indictment and the juries did not make a quantity finding sufficient to authorize a life sentence, see Apprendi v. New Jersey, 530 U.S. 466 (2000), we reverse the district court's judgment as to the sentences imposed and remand for resentencing of each defendant.

## I. Background

Stuart Stewart, Dietrick Banks, and Lenora Logan decided that Davenport, Iowa, would be a promising market in which to sell crack cocaine. Both Stewart and Dietrick Banks resided in Harvey, Illinois. Logan informed the two that she had several family members in Davenport who could be enlisted to help the trio break into the local drug market. The three made their first trip to Davenport for purposes of selling crack cocaine in December 1997, bringing with them a total of two ounces of the drug. After a few days, Logan arranged for the three to stay at Rosie Butler's apartment on State Street, which became the group's initial venue for selling crack cocaine. Logan and Butler are cousins.

The group was successful in selling crack cocaine out of Ms. Butler's apartment, and Banks and Stewart made several return trips to Harvey to replenish their inventory of crack cocaine. On their third trip in late December 1997, Tyrone Banks, Dietrick Banks' cousin, returned to assist with the drug-sales operation in Davenport. At some point, a decision was made that more money could be made if the group expanded its operation by selling drugs at an apartment building on Harrison Street. Logan's brother, Edward Green (E.G.) Harrison, who resided at the Harrison Street apartment, spearheaded the sale of crack cocaine (and later the conversion of cocaine powder into crack cocaine) at the Harrison Street building.

In March 1998, a dispute arose between Dietrick Banks and Stewart over who was entitled to certain proceeds from the drug sales. Stewart left Davenport and returned to Harvey, taking with him $10,000. Dietrick Banks believed that at least part of the $10,000 belonged to him. Sometime later in Harvey, a car driven by Maynie pulled alongside Stewart's automobile, and Dietrick Banks began firing at Stewart from the rear seat of Maynie's vehicle. At least one round struck Stewart's car, but he was not injured in the incident.

Maynie, who was also a Harvey native, joined Dietrick Banks in Davenport sometime after Stewart's departure from the operation. Around the same time, the Quad-City Metropolitan Enforcement Group ("MEG") initiated a series of controlled buys of crack cocaine from various individuals at the Harrison Street building. MEG officers purchased crack cocaine on seven occasions from March 5 through June 9, and the investigation culminated in a raid of the building on June 10, 1998. Officers seized cash, crack cocaine, scales, drug notes and various other drug paraphernalia. Maynie was present at the time of the raid, but the officers found no drugs or money on him.

Following the raid, E.G. Harrison and others who resided at the Harrison Street building were evicted, and they moved to another Davenport apartment building at 620 Perry Street where they resumed trafficking crack cocaine. The Perry Street building was eventually raided on July 14, 1998, and E.G. Harrison and three females, including Ms. Butler, were arrested for selling crack cocaine. Maynie was not present at the time of the raid, but officers seized a keyless remote to Maynie's vehicle, and found his vehicle parked outside the building at the time of the raid. According to those involved in the distribution, Dietrick Banks, Tyrone Banks, and Maynie supplied the cocaine sold at the Harrison Street and Perry Street apartments.

Dietrick Banks and Maynie were initially charged in an indictment in August 1998 with conspiracy to distribute crack cocaine. The government filed a superceding

4

indictment in April 1999, adding Logan as a defendant and naming E.G. Harrison and Tyrone Banks as coconspirators. The defendants were tried jointly in Des Moines, Iowa, beginning in late June 1999. On July 7, the jury found Dietrick Banks and Maynie guilty of conspiracy but was unable to reach a verdict as to Logan. Logan was retried in September 1999 and found guilty of conspiracy to distribute crack cocaine. The district court determined that Maynie and Banks faced a Guidelines sentence of life imprisonment and that Logan's Guidelines sentencing range was 360 months to life.[2] The district court, however, sentenced all three to mandatory life sentences under 21 U.S.C. § 841(b)(1)(A)(iii), based on its finding that each defendant was responsible for 50 grams or more of a mixture or substance containing crack cocaine and its finding that each had two prior drug felony convictions. See USSG § 5G1.1(c)(2) (prohibiting sentence less than the statutorily required minimum sentence). Section 841(b)(1)(A) requires a mandatory life sentence when a defendant has "two or more prior convictions for a felony drug offense" and is also accountable for 50 grams or more of crack cocaine in the instant offense.

On appeal, defendants raise a number of independent and interrelated arguments. Maynie argues his conviction should be set aside because the government violated the Speedy Trial Act, the district court should have transferred his trial, the district court erred in admitting Stewart's testimony concerning the shooting incident in Harvey, and the evidence was insufficient to support his conviction. Dietrick Banks joins Maynie's

---

[2]The district court found that all three defendants were responsible for more than 1.5 kilograms of crack cocaine, supporting a base offense level 38. See USSG § 2D1.1(c). The district court enhanced Maynie's sentence two levels for possession of a dangerous weapon, USSG § 2D1.1(b)(1), three levels for his role as a manager or supervisor, USSG § 3B1.1(b), and determined his criminal history category as V. The district court also enhanced Dietrick Banks' sentence two levels for possession of a weapon, four levels for his role as a leader or organizer, USSG § 3B1.1(a), and determined his criminal history category as IV. The court enhanced Logan's sentence two levels for her use of a minor in the commission of a crime, USSG § 3B1.4, and concluded that her criminal history category was VI.

5

argument that the district court abused its discretion in admitting Stewart's testimony. Logan argues the evidence presented at her trial was insufficient to support her conviction. All three defendants argue in the alternative that their sentences must be set aside in light of Apprendi.

## II. Pretrial Matters

### A. Speedy Trial Act

Maynie claims on appeal that his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161-74 (1994), were violated in two respects. He first complains that he was detained for an excessive period of time prior to his trial. As a general rule, a defendant must be tried upon an indictment within 70 days from the date of his initial appearance, see id. § 3161(d)(2), yet delay caused by certain statutorily-enumerated events are excluded from the 70-day period, see id. § 3161(h). Maynie was initially arraigned on September 15, 1998, and tried over nine months later. He also complains that through oversight he was not arraigned on the superceding indictment until the morning of his trial, thus violating § 3161(c)(2)'s requirement that a defendant be arraigned more than 30 days prior to trial.[3]

Maynie was originally scheduled to be tried in November 1998 but his attorney filed a motion for a competency evaluation and a motion to withdraw. The district court continued the trial, ordered the medical examination, and permitted Maynie's attorney to withdraw. The evaluation was completed in December 1998. Maynie was determined competent to stand trial, and the district court, through a series of four

---

[3] 18 U.S.C. § 3161(c)(2) provides: "Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se."

requested continuances by Maynie's newly-appointed counsel, ultimately set a May 1999 trial date. On April 22, 1999, the district court granted Maynie's request that his second attorney be permitted to withdraw, and Maynie's present counsel was appointed on May 11, 1999. The district court ultimately set the trial for June 28, 1999.

The district court addressed the numerous delays and the Speedy Trial Act issues in a hearing on the first day of trial. Both Maynie and his first attorney presented testimony. Maynie complained that he had not approved his attorney's request for a continuance and competency evaluation, and that the trial delay prejudiced him because the government secured additional witnesses who would not have testified had the trial been conducted in November 1998. The district court ruled that the delay was caused by Maynie's numerous motions (which the court found were filed with Maynie's consent and approval) and that the time was excluded under the Speedy Trial Act.

We agree that Maynie's speedy trial rights were not violated. As the district court noted, the continuances were precipitated primarily by Maynie's disruptive conduct and his inability to sustain representation. Maynie's first attorney indicated during testimony that he felt a competency exam was required based on his observations of Maynie's conduct in jail. The attorney testified that Maynie smeared his own feces on jail walls and appeared unable to comprehend and defend against the charges against him. As for his allegation that he was unaware of the motion for the competency evaluation, Maynie suggests no authority in support of his assertion that the time to conduct the evaluation should be charged against the government if his counsel acted without his approval in seeking the evaluation. Even if that were the case, we conclude the district court's finding that Maynie approved of his counsel's actions was not clearly erroneous. See United States v. Van Someren, 118 F.3d 1214, 1216 (8th Cir. 1997) ("In the context of the Speedy Trial Act, we review the district court's findings of fact for clear error . . . ."). The district court thus properly excluded the time necessary to conduct the competency examination. See 18 U.S.C. §

3161(h)(1)(A) (permitting exclusion of time for any examination to determine mental competency).

The additional delay caused by Maynie's numerous other motions to continue was also properly excluded. Maynie initially signed a plea agreement in October 1998, leaving the government and the district court with the impression that there would be no trial. During his April 1999 change of plea hearing, however, Maynie informed the court that he was not going to plead guilty and that he wanted new counsel. Trial delay caused by a defendant's vacillation after informing the government or the court that he would plead guilty is properly charged to the defendant and excluded from the 70-day period. See United States v. Mentz, 840 F.3d 315, 330 (6th Cir. 1988). The remaining delay from April until the time of trial was properly excluded as time necessary to appoint Maynie's third counsel and to permit his counsel to prepare for trial. See 18 U.S.C. § 3161(h)(8)(A); United States v. Cheek, 3 F.3d 1057, 1066 (7th Cir. 1993) (stating that continuance permitting defendant time to secure new counsel is excluded under § 3161(h)(8)), cert. denied, 510 U.S. 1112 (1994).

As for Maynie's argument that the district court erred in proceeding to trial on the same day he was arraigned on the superceding indictment, our circuit rejects the proposition that § 3161(c)(2) requires an automatic 30-day extension whenever a defendant is arraigned on a superceding indictment.[4] See United States v. Vaughn, 111 F.3d 610, 613 (8th Cir. 1997); United States v. Punelli, 892 F.2d 1364, 1369 (8th Cir. 1990). We have said instead that a district court has "broad discretion" to grant a continuance under such circumstances and should do so when the "ends of justice" so require. Punelli, 892 F.2d at 1369 (quoting § 3161(h)(8)). A district court should

---

[4]Maynie also asserts that the government unnecessarily delayed in bringing before the grand jury the charges contained in the superceding indictment. See Fed. R. Crim. P. 48(b) (permitting the district court to dismiss an indictment for excessive delay). Maynie has provided no factual or legal basis supporting his assertion.

consider whether "the defendant would be prejudiced by a lack of time to prepare to meet the new charges in the superceding indictment" in deciding whether to grant the continuance.  See Vaughn, 111 F.3d at 613.

The district court did not abuse its discretion in proceeding to trial immediately following the arraignment.  Neither Maynie nor his counsel complained prior to trial, nor do they now, that the last minute arraignment prejudiced Maynie's defense in any manner.  In fact, the district court offered to continue the trial after finding out that Maynie had not been arraigned, but Maynie informed the court that he wanted to withdraw his motion to continue the trial and proceed to trial because he disliked the jail at which the United States Marshal had arranged for him to be held.  Furthermore, the record establishes that Maynie's counsel was adequately prepared for trial, and the district court offered to accommodate Maynie's counsel in the event he later determined he was unprepared for one of the government's witnesses.  There is no indication any such accommodations were needed.

## B. Motion to Transfer

Maynie also challenges the district court's denial of his motion pursuant to Fed. R. Crim. P. 21(b) to retransfer venue to Davenport where the trial had originally been scheduled.  Maynie filed the motion on Friday, and the district court denied it on the following Monday during the pretrial hearing held on the first day of trial.  We review a district court's refusal to transfer venue for an abuse of discretion.  United States v. Blom, 242 F.3d 799, 803 (8th Cir. 2001).  Here, the district court was unquestionably within its discretion.  Maynie filed the motion essentially on the eve of trial, and the United States Marshal had already transported, or was prepared to transport, trial witnesses to the Des Moines area.  Moreover, the trial was apparently transferred to Des Moines in the first place because the Marshal was unable to find any jail facility near Davenport willing to house Maynie after his earlier disruptive conduct.

9

## III. Evidentiary Ruling

Maynie and Banks attempted both prior to and during their trial to prohibit the government from offering Stewart's testimony concerning the Harvey shooting incident. Both argued that the government sought to offer the evidence to show their propensity for criminal conduct in violation of Fed. R. Evid. 404(b). Accepting the government's argument that the testimony was actually direct evidence of a conspiracy, the district court ruled the testimony admissible as "probative of . . . a conspiracy to engage in drug trafficking." (Tr. at 75.) We conclude the district court's admission of the evidence did not amount to an abuse of discretion. See United States v. O'Dell, 204 F.3d 829, 833 (8th Cir. 2000) ("We review a district court's decision to admit evidence for an abuse of discretion.").

Evidence that a coconspirator participated in acts which furthered the conspiracy constitutes substantive evidence of the conspiracy's existence. See id. at 833-34. Such evidence is probative of the crime charged and does not fall within Rule 404(b)'s exclusion of "other crimes, wrongs, or acts." See United States v. Dierling, 131 F.3d 722, 732 (8th Cir. 1997), cert. denied, 523 U.S. 1054 (1998). Our circuit has previously recognized that evidence of violent acts committed by conspirators during and in relation to the conspiracy are direct evidence of the conspiracy and are therefore admissible. See, e.g., id. (concluding evidence of slaying and shooting committed during a drug conspiracy was not subject to Rule 404(b) exclusion); United States v. Grajales-Montoya, 117 F.3d 356, 363-64 (8th Cir.) (stating evidence that drug conspirators kidnaped, interrogated, and arranged for their maid to be killed was admissible as direct evidence of a conspiracy), cert. denied, 522 U.S. 983 (1997).

Evidence of Maynie and Banks' attempt to shoot Stewart is similarly admissible as substantive evidence. The shooting incident occurred during the time period in which the government charged that the conspiracy was ongoing. According to Stewart's testimony, a rift occurred between himself and Dietrick Banks because Banks

believed Stewart was taking more than his share of the drug proceeds. He further testified that he saw Maynie pass the gun to Banks as he pulled alongside him and that Banks fired at him. The testimony tended to establish the sale of crack cocaine by members of the conspiracy, the existence of an agreement to share in the proceeds, and the extent to which Maynie and Banks would protect their stake in the operation. The evidence also explained Maynie's entrance into the operation and the extent of his involvement. Because Stewart's testimony was relevant to the existence of an agreement and demonstrated acts committed by Banks and Maynie in furtherance of the conspiracy, it was properly admitted as substantive evidence of the conspiracy itself.

We reject Maynie and Banks' argument that evidence of the shooting was unfairly prejudicial. See Fed. R. Evid. 403. Although relevant to the existence of a conspiracy, violent acts may be excluded if their probative value is substantially outweighed by their prejudicial effect. See O'Dell, 204 F.3d at 834. Here, the probative value of the evidence was substantial and far outweighed any prejudicial effect.

## IV. Sufficiency of the Evidence

Maynie and Logan argue the evidence presented at their trials was insufficient to support that they were members of a conspiracy to distribute crack cocaine. In determining whether the evidence was sufficient to support a conviction, we view the evidence in a light most favorable to the verdict, giving it the benefit of all reasonable inferences. United States v. Calderin-Rodriguez, 244 F.3d 977, 983 (8th Cir. 2001). Reversal is required only where no reasonable jury could have found a defendant guilty beyond a reasonable doubt. Id. "[T]he standard to be applied to determine the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly." Hill v. Norris, 96 F.3d 1085, 1088 (8th Cir. 1996) (quoting United States v. Brown, 921 F.2d 785, 791 (8th Cir. 1990)). To support a conviction for

11

conspiracy, the evidence must show: "1) the existence of a conspiracy with an illegal purpose, 2) that the defendant was aware of the conspiracy, and 3) that the defendant knowingly became a part of the conspiracy." United States v. Ray, 250 F.3d 596, 600 (8th Cir. 2001).

## A. Maynie

Maynie directs his challenge at the third showing. He contends the evidence showed, at best, that he was aware of the conspiracy and that he was present when drug sales were made but that he was not actively involved. We conclude, however, that there was an abundant amount of evidence presented showing that Maynie was actively involved in the distribution of crack cocaine and that he undertook numerous other acts in furtherance of the conspiracy, which supports a finding that he was a knowing participant.

Tyrone Banks testified to much of Maynie's involvement in the conspiracy. According to his testimony, Maynie first appeared in Davenport after Stewart and Dietrick Banks had their disagreement, and Maynie and Dietrick Banks then "went together on everything." (Tr. at 131.) Tyrone Banks testified that part of his role in the operation was to store crack cocaine at a different location until the drug was needed and that Maynie would drop off crack cocaine to him and pick it up later when there was need for it. He also testified that either Maynie or Dietrick Banks called him to inform him when Maynie would be by to pick up the drug.

There was also other evidence of Maynie's involvement in the operation's distribution of crack cocaine. One individual testified that Maynie, E.G. Harrison, and others traveled to Chicago three to four times per month to replenish their supply of crack cocaine. Rosie Butler also testified that she saw Maynie drop off drugs and pick up money at both the Harrison Street and Perry Street apartments. She also testified that she observed Maynie selling crack cocaine at the Harrison Street apartment on the

12

day officers raided the building and that she purchased crack cocaine from him on that day.

Evidence of Maynie's involvement extended beyond the mere logistics of distributing the crack cocaine. Three witnesses testified that they were present at the Harrison Street apartment when Dietrick Banks and Maynie beat an individual with a board because he had stolen crack cocaine from them. Tyrone Banks also testified that Dietrick Banks became suspicious after Stewart's departure and believed that he had also stolen drug money. He testified that Maynie, at Dietrick Banks' direction, later placed a gun to his head and robbed him of his clothing and drug money that was in his possession. Finally, Stewart testified that Maynie was an accomplice in the shooting incident, which, as we have already discussed, was highly probative of Maynie's involvement.

We reject Maynie's assertion that this evidence merely established that he was present when drugs were being sold. Once the existence of a conspiracy is established, "only slight evidence is required to link a defendant to the conspiracy." United States v. Jiminez-Perez, 238 F.3d 970, 973 (8th Cir. 2001). Evidence of Maynie's knowing participation was far greater than "slight," and we accordingly conclude that the evidence supports his conviction.

## B. Logan

Logan also contends there was insufficient evidence to support her conviction, although she herself identifies numerous instances in which nine witnesses, coconspirators, and others somehow connected to the operation, gave testimony directly implicating her knowledge of the conspiracy and her active participation in it. In light of Logan's candid and forthright admission, we do not need to discuss the evidence in detail. Needless to say, we have reviewed the record and conclude that there was adequate evidence presented to support her conviction. The evidence

showed that she initiated the drug operation by suggesting that Davenport would be a good place to sell crack cocaine. It also showed that she was instrumental in finding a location in Davenport from which drugs could be sold, that she sold drugs herself, and that she regularly supplied her brother, E.G. Harrison, with crack cocaine to sell.

Logan suggests instead that the evidence of her involvement was insufficient because the nine witnesses were incredible. She essentially argues that the jury was not entitled to believe their testimony because most of the witnesses admitted personal drug use and because all nine were seeking leniency, in some respect, from either the state or federal government for their involvement in the conspiracy. Memory and bias are matters implicating a witness's credibility and the weight to be given the testimony. They are within the province of the jury, and we are prohibited from evaluating them when reviewing the sufficiency of the evidence. See United States v. Stroh, 176 F.3d 439, 440 (8th Cir. 1999).

V. Apprendi

Between the time of defendants' trials and when we heard their appeals, the Supreme Court announced its decision in Apprendi v. New Jersey. The Court held in Apprendi that any fact (other than a prior conviction) which increases the penalty for a crime beyond the maximum statutory penalty authorized must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 488-90. We subsequently held in United States v. Aguayo-Delgado, 220 F.3d 926, 933-34 (8th Cir.), cert. denied, 121 S. Ct. 600 (2000), that the government is prohibited from seeking a penalty in excess of those provided in § 841(b)(1)(C) unless drug quantity is alleged in the indictment and submitted to the jury. The Apprendi issue was raised for the first time in this case during oral argument, and we asked for supplemental briefing on the issue. Defendants argue in their supplemental briefs that the district court erred in imposing mandatory life sentences under § 841(b)(1)(A)(iii) because their prior drug felony convictions and drug quantity were not alleged in the superceding indictment or found by a jury.

14

Although the Supreme Court explicitly excluded prior convictions from those facts which constitute an element of the offense, defendants argue the Court was prepared to overrule its holding in Almendarez-Torres v. United States, 523 U.S. 224 (1998), and ask us to advance Apprendi that additional step. We decline. See United States v. Rush, 240 F.3d 729, 731 (8th Cir. 2001) (rejecting argument that prior conviction must be found by a jury because Apprendi expressly excluded prior convictions from its holding). We are obligated to follow what the Supreme Court has said, not guess what it might say in the future. See Agostini v. Felton, 521 U.S. 203, 237 (1997) (stating that a court of appeals should follow controlling Supreme Court precedent even though it may have been called into question indirectly).

The second prong of defendants' Apprendi argument, that their sentences were unlawfully imposed because drug quantity was not alleged in the indictment or submitted to the jury, was not raised below and is therefore subject to plain error review. See Fed. R. Crim. P. 52(b); United States v. Butler, 238 F.3d 1001, 1005 (8th Cir. 2001). Before we may grant relief on plain error review, defendants must establish (1) error, (2) that the error was plain, and (3) that the error affected their substantial rights. Butler, 238 F.3d at 1005. If defendants can establish these three requirements, we may notice the error but only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Johnson v. United States, 520 U.S. 461, 467 (1997) (internal quotations and alterations omitted). The government concedes defendants were erroneously sentenced because their sentences exceed the penalty authorized under § 841(b)(1)(C). It also concedes the error was plain but argues defendants cannot make the substantial rights showing or establish that the judicial proceedings are affected by the error.

Whether the error is cognizable under plain error review has substantial consequences to defendants. Because all three have at least one prior drug felony conviction, the maximum sentence the district court could have imposed without

15

violating <u>Apprendi</u> was 30 years.[5]  <u>See</u> <u>United States v. Arias</u>, No. 00-3032, 2001 WL 630608, at *4 (8th Cir. June 8, 2001) (recognizing that defendant with prior conviction may be sentenced to 30-year sentence under § 841(b)(1)(C) without offending <u>Apprendi</u>).  Defendants instead each received a life sentence.

A defendant's rights are substantially affected when the error "prejudicially influenced the outcome of the district court proceedings." <u>Butler</u>, 238 F.3d at 1005 (quoting <u>United States v. Poulack</u>, 236 F.3d 932, 938 (8th Cir. 2001)).  In previous cases where a sentence has been challenged on a previously unraised ground, we have found a defendant's substantial rights were affected where correction of the error would result in a lesser term of imprisonment.  <u>See</u> <u>United States v. Kroeger</u>, 229 F.3d 700, 702 (8th Cir. 2000) (holding that error causing sentence to exceed authorized Guideline sentence by 30 months affects substantial rights); <u>United States v. Comstock</u>, 154 F.3d 845, 850 (8th Cir. 1998) (recognizing that substantial rights were affected where defendant would serve 17 months less if the error had not occurred); <u>see also</u> <u>United</u>

---

[5]Maynie argues the two convictions relied upon by the district court to enhance his sentence to life under § 841(b)(1)(A) are not "felony drug offense[s]" within the meaning of the statute.  We need only address one of his prior convictions because one felony drug offense triggers a maximum 30-year sentence under § 841(b)(1)(C). Despite his argument, the district court correctly found that his Wisconsin conviction for possession of a controlled substance constitutes a "felony drug offense." <u>See</u> 21 U.S.C. § 802(44) (Supp. IV 1998) ("The term 'felony drug offense' means <u>an</u> <u>offense</u> punishable by imprisonment for more than one year . . . ."); <u>United States v. Spikes</u>, 158 F.3d 913, 932 (6th Cir. 1998) (rejecting argument that additional element beyond mere possession of drugs is necessary to meet the definition of a "felony drug offense"), <u>cert. denied</u>, 525 U.S. 1086 (1999).  We similarly reject Logan's argument that enhancing her sentence under § 841(b) based on a previous state drug offense, which in another state would not have subjected her to punishment of more than one year, violates her right to equal protection. <u>See</u> <u>United States v. Woodall</u>, 120 F.3d 880, 882 (8th Cir. 1997) (recognizing that a federal sentencing scheme influenced by idiosyncratic state penalty systems does not violate a defendant's right to equal protection).

States v. Robinson, 250 F.3d 527, 529 (7th Cir. 2001) (noting there was "no question" an Apprendi error affected substantial rights where defendant's sentence exceeded authorized sentence by 20 years); United States v. Miranda, 248 F.3d 434, 445 (5th Cir. 2001) (concluding that Apprendi error affects substantial rights); United States v. Wilson, 244 F.3d 1208, 1220 n.7 (10th Cir. 2001) (recognizing that Apprendi error where sentence exceeded authorized sentence by 10 years affected a defendant's substantial rights). Had the district court sentenced defendants under § 841(b)(1)(C), as we now know was constitutionally required, defendants would be facing 30 years instead of life in prison. We hold that this greater, and improper, infringement of defendants' liberty substantially affected their rights.

Our court held in Poulack that an Apprendi error did not affect the defendant's substantial rights where the defendant (1) was informed prior to trial of drug quantity the government intended to prove, (2) had an opportunity to contest the weight of drug prior to trial, (3) stipulated to drug quantity at trial, and (4) where the defendant's counsel conceded there was no basis to contest the district court's quantity finding. See Poulack, 236 F.3d at 937-38. The circumstances are quite different here. The government has not suggested that defendants were informed prior to trial of the amount of crack cocaine it sought to prove, nor did defendants stipulate to drug quantity at trial. See Butler, 238 F.3d at 1005 (distinguishing Poulack where defendant had not "admit[ted] to the essential element of [drug] quantity at trial"). And, unlike in Poulack, defendants had grounds for attacking the credibility of the government's witnesses whose testimony formed the sole basis for the district court's drug quantity finding.

The government argues, relying on Johnson v. United States, that we should nevertheless refuse to recognize the Apprendi error because it does not seriously affect the fairness, integrity, or public reputation of judicial proceedings. In Johnson, the defendant was indicted for perjury under 18 U.S.C. § 1623 and found guilty by a jury. During the trial, the district judge instructed the jury based on then-existing precedent

that the issue of whether the defendant's statement was "material" was an issue for the judge to decide and that he had determined the statement to be material. The Supreme Court subsequently decided in United States v. Gaudin, 515 U.S. 506 (1995), that materiality was an issue for the jury, and the Johnson defendant asserted error in her direct appeal. On plain error review, the Supreme Court held that the failure to submit the element of materiality to the jury did not seriously affect the fairness, integrity or public reputation of judicial proceedings because the evidence of the statement's materiality was "overwhelming." Johnson, 520 U.S. at 469-70.

The government argues here that the Apprendi error also has no effect on the judicial proceedings because there was "overwhelming" evidence that the defendants were responsible for 50 grams or more of crack cocaine. We recognize that there was a significant amount of testimony presented that, if the juries believed the witnesses, surely would have resulted in a finding that each defendant was responsible for substantially more than 50 grams. The Apprendi error in this case, however, unlike the error in Johnson, involves more than the mere failure to instruct the jury on an element of the offense; it involves the government's failure to charge an element of the offense in the indictment, and the district court's imposition of a sentence which both exceeds the crime charged by the government and exceeds the punishment authorized for the offense of conviction.

In United States v. Griffin, we recognized that a variance between facts charged in an indictment and the evidence presented by the government at trial that

> is so fundamental that it permits the jury to convict the defendant of a different crime than that charged . . . is a constructive amendment of the indictment that – "destroy[s] the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury. Deprivation of such a basic right is far too serious to be treated as nothing more than a variance and then dismissed as harmless error."

18

215 F.3d 866, 868 (8th Cir. 2000) (internal quotations omitted) (quoting <u>Stirone v. United States</u>, 361 U.S. 212, 217 (1960)). The <u>Apprendi</u> error in this case is analogous. Unless we recognize and correct the error during this direct appeal, we will have permitted the government to imprison the defendants for a crime for which they have not received the notice and grand jury protections to which they were entitled under the Fifth and Sixth Amendments. As the Supreme Court noted in <u>Apprendi</u> itself, a judge lacks the authority to sentence a defendant to an uncharged crime. <u>See</u> <u>Apprendi</u>, 530 U.S. at 483 n.10 ("The judge's role in sentencing is constrained at its outer limits by the facts alleged in the indictment and found by the jury."). We therefore conclude that the error in this case seriously affects both the fairness and integrity of these judicial proceedings and falls beyond that category of errors which are not cognizable on plain error review.[6] <u>Cf.</u> <u>United States v. Cernobyl</u>, No. 00-7033, 2001 WL 733406, at *4 (10th Cir. June 29, 2001) (remanding for resentencing because <u>Apprendi</u> error created doubt about the fairness and integrity of the proceedings); <u>United States v. Martinez</u>, Nos. 99-2025, 99-2027, 2001 WL 661127, at *3 (6th Cir. June 14, 2001) (exercising discretion to correct <u>Apprendi</u> error because fairness of proceeding was undermined); <u>United States v. Villarreal</u>, No. 99-41095, 2001 WL 641519, at *5-6 (5th Cir. June 11, 2001) (holding that <u>Apprendi</u> error affected proceedings because correcting error would result in a significant reduction in defendant's sentence); <u>United States v. Fields</u>, Nos. 99-3138, 99-3139, 2001 WL 640631, at *3 (D.C. Cir. June 12, 2001) (concluding that <u>Apprendi</u> error affected fairness of judicial proceedings); <u>Butler</u>, 238 F.3d at 1005 (concluding the same).

---

[6]In <u>United States v. Anderson</u>, 236 F.3d 427, 430 (8th Cir. 2001), the court found the district court's failure to submit drug quantity to the jury to be harmless error where no rational jury could have found less than five grams, the quantity sufficient to trigger § 841(b)(1)(B)'s penalty provisions. There was no indictment problem in <u>Anderson</u>, however, because the government charged a sufficient drug quantity to trigger § 841 (b)(1)(A)'s penalties. <u>See</u> <u>id.</u> <u>Anderson</u> involves a situation almost identical to that addressed in <u>Johnson</u>.

A remand for resentencing is the appropriate relief to cure the <u>Apprendi</u> violations. <u>See</u> <u>Ray</u>, 250 F.3d at 603. On remand, the district court must resentence defendants under § 841(b)(1)(C)'s penalty provisions. Although the district court initially determined that each defendant faced a potentially higher Guideline sentence, it is required by USSG § 5G1.1(c)(2) to resentence defendants to a 30-year sentence. We decline to reach Maynie's argument that the district court erred by enhancing his sentence for possession of a dangerous weapon and for his role as a manager or supervisor. Even if we determined that both enhancements were improper, Maynie would still face a Guideline sentencing range of 360 months (30 years) to life based on an adjusted base offense level 38 and criminal history category V. Thus, the district court would still be required to resentence Maynie to the same 30-year sentence.[7]

## VI. <u>Conclusion</u>

For the reasons set forth above, we affirm defendants' convictions, but reverse defendants' sentences and remand to the district court with directions to resentence each defendant to a 30-year term of imprisonment. <u>See</u> 18 U.S.C. § 3742(f)(1) (1994).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[7]We decline to reach the issues raised by Maynie and Dietrick Banks in their supplemental pro se briefs. <u>See</u> <u>United States v. Peck</u>, 161 F.3d 1171, 1174 n.2 (8th Cir. 1998) (noting that it is not our circuit's practice to address issues raised pro se by represented defendants).