# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2257

_____

United States of America,

        Appellee,

v.

William Anthony Lofton,

        Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Southern District of Iowa.
\*
\*
\*

_____

Submitted: December 10, 2008
Filed: February 20, 2009

_____

Before WOLLMAN, BYE, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

William Anthony Lofton was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced Lofton under the Armed Career Criminal Act, 18 U.S.C. § 924(e), to 327 months' imprisonment. Lofton appeals, challenging the sufficiency of the evidence and the district court's failure to exclude certain testimony. We affirm.

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

# I.

Shortly before daybreak on July 27, 2006, Christopher Dagen and Donald DeWitt drove to the Davenport, Iowa, Police Department to report that they had been at a friend's house the previous night and that Lofton, who was staying at the same house, had started an argument. They stated that Lofton had threatened them with a gun, and they expressed concern for the safety of their friend back at the house.

Officer Randall Gard conducted the interview. He later testified that although he was initially skeptical about the men's motives, their urgency and sincerity convinced him that the situation was serious. Several officers were sent to the house, where they found Lofton in the front yard. After a search of Lofton's person and a thorough search of the residence failed to yield a weapon, the officers focused their attention on two vehicles in front of the house. A license check revealed that one of the vehicles, a green van, was registered to a woman named Mary Gilmore. The police contacted Gilmore, who consented to a search of the van. The police found a 9mm Ruger handgun in a compartment under the passenger seat.

Lofton was charged with being a felon in possession of a firearm and with two narcotics-related offenses (on which he was acquitted). At trial, DeWitt testified that Lofton possessed the handgun and that he brandished it during the July 27 argument. Gilmore testified that at the time the gun was found, she was in the process of selling the van to Lofton and had been allowing him to use the vehicle. She further testified that the gun was not in the van when Lofton took control of it. Jermaine Ford, an inmate with whom Lofton had been housed after his arrest, testified that Lofton privately confessed to possessing the gun.

II.

Lofton first argues that the evidence was insufficient to support his conviction. We review challenges to the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government, resolving evidentiary conflicts in the government's favor, and accepting all reasonable inferences that support the verdict. United States v. Abdul-Aziz, 486 F.3d 471, 477 (8th Cir. 2007). "Reversal is warranted only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. (quoting United States v. Flores, 474 F.3d 1100, 1105 (8th Cir. 2007)) (internal quotation omitted).

To convict Lofton of being a felon in possession of a firearm, the government was required to prove that Lofton had a prior felony conviction, that he knowingly possessed a firearm, and that the firearm had affected interstate commerce. See id. Lofton stipulated the existence of the two elements other than knowing possession, leaving only the question whether the evidence was sufficient to show that he knowingly possessed a firearm.

The linchpin of the government's case was DeWitt's testimony that he saw Lofton using the handgun and Ford's testimony that Lofton confessed after he was incarcerated. Lofton contends that DeWitt and Ford were not credible, because DeWitt lied during his grand jury testimony and because Ford was a convicted felon who was offered a sentence reduction for cooperating with the government. It is axiomatic, however, that credibility determinations are for the jury. See United States v. Grover, 511 F.3d 779, 782 (8th Cir. 2007). "Consequently, a verdict based solely on the testimony of coconspirators and cooperating witnesses should normally be upheld." Id. Lofton's counsel thoroughly cross-examined both DeWitt and Ford, and both sides vigorously argued the issue of credibility. Moreover, the government presented circumstantial evidence that lent credence to its case. Officer Gard testified that Dagen and DeWitt appeared earnest and sincere when they gave their initial

report, and Gilmore testified that Lofton had access to the vehicle where the handgun was discovered. The jury found the government's witnesses credible, and we cannot say, looking at the evidence in the light most favorable to the verdict, that this conclusion was unreasonable.

III.

Lofton also argues that the district court erred when it denied his motion in limine to exclude Ford's testimony on the basis of late disclosure. He argues that he was unfairly prejudiced because his trial counsel learned of Ford's identity only nine days before trial and learned the substance of Ford's testimony on the last business day before trial. We review for abuse of discretion a district court's refusal to exclude testimony based on the government's alleged late disclosure. United States v. Sandoval-Rodriguez, 452 F.3d 984, 989 (8th Cir. 2006). "In our review we consider (1) whether the Government acted in bad faith and the reason(s) for delay . . . ; (2) whether there is any prejudice to the defendant; and (3) whether any lesser sanction is appropriate to secure future Government compliance." Id. (quoting United States v. Pherigo, 327 F.3d 690, 694 (8th Cir. 2003)).

The record does not support Lofton's contention that the government acted in bad faith. The government disclosed Ford's identity and the nature of his plea agreement more than a week before the trial, and Lofton's counsel received details about Ford's testimony immediately after Ford was interviewed. Given that Ford's testimony was straightforward and that the trial was relatively uncomplicated, there is no reason to believe that the government meant to gain a tactical advantage with this timing.

Nor is there any reason to believe that Lofton was prejudiced. His main contention is that additional time would have allowed him to find rebuttal witnesses who would have testified that the incriminating conversation never took place. This

assertion is belied, however, by the nature of Ford's testimony: he stated that Lofton confessed privately when no other inmates were in the vicinity of their conversation. Given these circumstances, it is difficult to envision how Lofton was prejudiced by the government's failure to offer more prompt disclosure. Accordingly, the district court did not abuse its discretion when it refused to exclude Ford's testimony.

The judgment is affirmed.[2]

_____

[2]We have considered the additional claims raised in Lofton's *pro se* supplemental brief and in his recently filed motion to reverse his conviction and dismiss the charges, and we find them to be without merit. See United States v. Janis, 387 F.3d 682, 686 (8th Cir. 2004) ("[T]he Fourth Amendment is not violated if the facts available to the officer at the time of the search would warrant a reasonable man in the belief that someone with authority over the premises consented to the search.") (internal quotations omitted); see also United States v. Robinson, 516 F.3d 716, 717 (8th Cir. 2008) ("A sentence within the Guidelines range is accorded a presumption of substantive reasonableness on appeal.").