# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1037

_____

United States of America,

Appellee,

v.

Robert Paul Bossany, Jr.

Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
District of Minnesota.

_____

Submitted: March 12, 2012
Filed: May 1, 2012

_____

Before MURPHY, ARNOLD, and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Robert Bossany pleaded guilty to money laundering, *see* 18 U.S.C. § 1956(a)(1)(B)(i), and conspiring to commit honest-services mail fraud, *see* 18 U.S.C. § 1346. The district court sentenced him to two 90-month prison terms to be served concurrently. Mr. Bossany challenges his sentence on appeal, contending that the court erred by denying him an acceptance-of-responsibility reduction under U.S.S.G. § 3E1.1 and by sentencing him above the 60-month maximum for the conspiracy offense. We affirm.

I.

Mr. Bossany worked as a purchasing manager for Best Buy stores, which sells electronics and services computers. In this position, he assisted one of the vendors, Chip Factory, Inc., in defrauding his employer. Best Buy obtained computer parts for its service department by using the Parts Procurement Network (PPN), an online reverse bidding system that was administered by National Parts (NP). Under the system, Best Buy identified the parts that it needed, NP posted them online, and vendors that had the parts placed bids by listing their prices; the PPN then awarded the order to the lowest bidder. In 2003, Chip Factory, through Russell Cole, company president, and his wife, Abby Cole, owner, began exploiting a defect in the PPN: The company placed false low bids to obtain orders and then entered the online system to increase the price; Best Buy then paid invoices that were based on the higher price. In 2007, Best Buy executives discovered that Chip Factory's total invoices exceeded its bids by over 25 million dollars and contacted law enforcement.

Mr. Bossany knew about Chip Factory's scheme, though he was unaware of its magnitude, and he assisted the Coles in concealing and furthering the fraud. In 2004, for example, he warned Mr. Cole not to submit any "dollar bids" (false low bids) during a particular time period because he (Mr. Bossany) would be out of the office and his supervisor would be monitoring the account. Whenever NP and Mr Bossany's superiors raised questions about Chip Factory's pricing, he promised to "take care of it" but instead notified Mr. Cole of the inquiry and suggested how to avoid arousing suspicion in the future. Mr. Bossany also shared confidential company information with Mr. Cole to further the scheme. In return for Mr. Bossany's efforts, the Coles sent checks, cash, and gift cards to his home address and gave him a motorcycle and an ATV. Mr. Bossany accepted the money and gifts as compensation for his part in the conspiracy and said nothing about them to his superiors.

During a criminal investigation of Mr. Bossany's participation in the scheme, he agreed to cooperate. He wore a recording device to nineteen meetings with

Mr. Cole and thereby obtained incriminating statements that the government used to prosecute the Coles. Mr. Bossany also met at least eight times with government agents after his guilty plea, providing them with information about the scheme, including his acceptance of bribes for concealing the Coles' activities. In his plea agreement and at his guilty-plea hearing, he acknowledged that he had conspired with Mr. Cole and Chip Factory and, in return, received money and gifts from the Coles. Nor did he dispute a similar account of his criminal activities that appeared in the presentence investigation report, which the sentencing court accepted as true.

The judge who sentenced Mr. Bossany presided over the the Coles' trial, in which Mr. Bossany testified as a government witness. He admitted on direct examination that he had "covered up" the fraud, provided Mr. Cole with confidential information, and accepted the money and gifts in return for participating in the conspiracy. But Mr. Bossany's testimony changed on cross- and re-cross-examination: He denied knowing about Chip Factory's bid-to-invoice variances and then agreed with defense counsel that he surely could not have "covered up" something that he was unaware of. He also testified that he had treated Chip Factory as he believed Best Buy would have wanted him to. And he denied that the gifts and payments from Mr. Cole were bribes or related in any other way to his helping with the fraud. Despite Mr. Bossany's change in testimony, the jury convicted the Coles.

At sentencing, the court noted that it had observed Mr. Bossany's testimony at the Coles' trial and had "no doubt" that he committed perjury on cross-examination. Therefore the court, as the government requested, imposed an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, and refused a reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1. It calculated Mr. Bossany's sentencing range as 151 to 188 months, but then credited him for helping the government and imposed concurrent 90-month sentences.

## II.

Mr. Bossany maintains that the court erred by denying him an acceptance-of-responsibility reduction. Under U.S.S.G. § 3E1.1(a), he had the burden to show that he "clearly demonstrated acceptance of responsibility." *Id.* "Whether the defendant accepted responsibility is a factual question that depends largely on credibility assessments," and the district court's finding that Mr. Bossany did not accept responsibility "is entitled to great deference." *United States v. Spurlock*, 495 F.3d 1011, 1014 (8th Cir. 2007), *cert. denied*, 552 U.S. 1054 (2007). We reverse such a finding "only if it is so clearly erroneous as to be without foundation." *Id.*

On appeal, Mr. Bossany does not challenge his enhancement for obstruction of justice, an enhancement that "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1 cmt. n.4; *see United States v. Hull*, 646 F.3d 583, 588 (8th Cir.2011). Mr. Bossany notes the general rule, but he argues that he showed "extraordinary circumstances" that made him eligible for a reduction for accepting responsibility despite his obstruction enhancement. *See* U.S.S.G. § 3E1.1 cmt. n.4. The guidelines recognize that in an "extraordinary case," a defendant may qualify for the reduction, despite having obstructed justice. *Id.* But those cases are "extremely rare and highly exceptional," *United States v. Honken*, 184 F.3d 961, 970 (8th Cir.1999), *cert. denied*, 528 U.S. 1056 (1999), and we see nothing exceptional in this case that compels a finding of acceptance of responsibility despite Mr. Bossany's perjury. The court found that his repeated false statements at a crucial point in the case were "all direct repudiations of his own guilt." The perjured testimony went to the heart of acceptance of responsibility, and the court did not clearly err in finding that he did not "clearly demonstrate" his willingness to take responsibility for his criminal conduct. *See* U.S.S.G. § 3E1.1.

III.

Mr. Bossany contends for the first time on appeal that his 90-month sentence for conspiracy exceeds the five-year (60-month) statutory maximum, *see* 18 U.S.C. § 3742(f)(1), and we agree. The district court notified Mr. Bossany of the five-year maximum at his guilty-plea hearing, but at sentencing mistakenly imposed a 90-month prison term for both counts. During the sentencing hearing, the court explained its decision to impose a below-guidelines sentence of 90 months because of Mr. Bossany's assistance to the government. It then followed guideline directions that apply unless "otherwise required by law" and imposed a concurrent sentence equal to the "total punishment" for each count. Neither the court nor the parties pointed out that a sentence of no more than 60 months was "otherwise required" for conspiracy, which had a so-called "guideline range" of 60 months. U.S.S.G. §§ 5G1.2(b), 5G1.1(a); *see* 18 U.S.C. § 1346. Because Mr. Bossany did not raise the issue in the district court, we review for plain error only; under this standard, we may correct an error only if it is plain, affects substantial rights, and "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (en banc) (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)).

Though the error is plain, we conclude that it did not affect Mr. Bossany's substantial rights by "prejudicially influenc[ing] the outcome of the district court proceedings," *United States v. Maynie*, 257 F.3d 908, 919 (8th Cir. 2001). Regardless of the error, Mr. Bossany would have been sentenced to 90 months in prison because the court imposed an identical prison term for money laundering, which has a 240-month maximum. Although we think that the mere presence of of an excessive sentence in a defendant's record has the potential of causing prejudice, we have held that an illegal sentence alone does not establish the prejudice necessary for plain error relief: For example, we have held that a defendant's substantial rights are not affected by sentences that exceed the maximum authorized by jury findings (and thus violate the Sixth Amendment), if the district court "could have" imposed legal sentences on

those counts and used consecutive sentences (rather than concurrent) to achieve the same "total punishment" under U.S.S.G. § 5G1.2(d). *See United States v. Diaz*, 296 F.3d 680, 683-85 (8th Cir. 2002) (en banc), *cert. denied*, 537 U.S. 940 & 1095 (2002); *United States v. Gillon*, 348 F.3d 755, 758 (8th Cir. 2003), *cert. denied*, 541 U.S. 968 (2004). We think that these cases require Mr. Bossany to show that, absent the error, the court could not have imposed 90 months' imprisonment as his total punishment, which, of course, he cannot do since the court legally imposed that sentence on another count. We must therefore deny plain error relief.

Because we conclude that Mr. Bossany cannot establish the prejudice necessary for plain error, we deny his request that we remand for resentencing on his conspiracy conviction. *See United States v. Gray*, 332 F.3d 491, 492 (7th Cir. 2003), *cert. denied*, 540 U.S. 993 (2003).

We affirm the judgment of the district court.

_____