# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3040
_____

United States of America

*Plaintiff - Appellee*

v.

Kevin Darnell Williams, also known as Splash

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: September 28, 2018
Filed: December 17, 2018
_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Following a jury trial, Kevin Darnell Williams was convicted of conspiracy to distribute and possess with intent to distribute marijuana, interference with commerce by robbery (or a Hobbs Act robbery), using and carrying a firearm during and in

relation to a drug-trafficking offense or a crime of violence, and being a felon in possession of a firearm. Each count stemmed from the robbery and shooting of an individual from whom Williams had arranged to purchase large amounts of marijuana. The district court[1] sentenced Williams to 270 months imprisonment. Williams appeals both his convictions and sentence, arguing that the evidence was insufficient to support his convictions, that his 18 U.S.C. § 924(c) conviction must be vacated because a Hobbs Act robbery is not a crime of violence, and that the district court sentenced him to a prison term for the conspiracy count that exceeded the statutory maximum, mandating that his sentence be vacated and he be re-sentenced as to all counts. Having jurisdiction under 18 U.S.C. § 1291, we affirm.

I.

On August 6, 2016, Williams began communicating via text message with an individual named Leonard Boyd to inquire about purchasing marijuana. Williams first sent Boyd a message stating, "Watz good this splash." Boyd informed Williams that he was running low on marijuana but would soon be traveling to get more, stating "I'm about to go out of town today all i have is 2 zones left." Williams asked Boyd to "[l]et me know when u come back i need that like asap." On August 8, Williams communicated via text message with another individual, Vyagales Shaw. Shaw, who was known by the nickname "V," initiated the conversation by sending Williams a message stating, "it was only 2.1 you trying to get him some more," to which Williams responded, "yeah." Williams and Shaw continued to communicate about when Williams would have more marijuana.

Boyd subsequently traveled to Colorado where he, his girlfriend, and another individual made legal purchases of canisters of marijuana from licensed Colorado

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

marijuana dispensaries.  Boyd then returned to Iowa with the marijuana.  On August 9, after his return, Boyd sent Williams a message stating, "I got 7 more . . . U want it," to which Williams replied, "How much you want for it."  Boyd responded, "1750 and they're all different so you don't just have the same thing . . . you don't want it."  Williams responded, "Yeah I can do that."  Williams provided Boyd the address of an apartment complex in Ames, Iowa, where the two were to complete the transaction.  Williams then communicated via text message with Shaw, explaining that Boyd was on the way to the address Williams provided in Ames.  Williams and Shaw exchanged messages about traveling to the location together and arrived at the apartment complex together in the same vehicle.

Later that same day, officers responded to a 911 call reporting shots fired on the same street discussed in the text messages between Williams and Boyd.  When officers arrived, they discovered Boyd lying in the street suffering from multiple gunshot wounds.  A witness took a cell phone video of the immediate aftermath of the shooting before police officers arrived.  The video depicted the scene and included the witness's voice stating that a black male with long hair fled the scene on foot while another black male with "like no hair" fled the scene in a sedan, noting the exact license plate.  Another witness reported that she saw two men arguing behind a car and was "pretty sure" she saw a black male with long hair holding a gun.  She then looked away from the scene, but went outside after hearing what "sounded like fireworks" and saw Boyd on the ground.  This witness administered aid to Boyd until law enforcement arrived.  During this time, Boyd's girlfriend, who was also present at the scene, told the witness that Boyd knew his shooter and identified the shooter to the witness by his nickname, which the witness remembered being short and starting with the letter "S."

Another witness went outside to the scene after hearing a loud noise.  He observed a black male with longer hair exit from a nearby apartment by kicking out a window. The witness and the man looked directly at each other before the man fled

-3-

on foot. Law enforcement later determined that the apartment from which the witness had observed the man exit via the kicked-out window belonged to Williams's girlfriend. Officers executed a search warrant on this apartment the same day, during which they observed numerous indicia of residency for both Williams and his girlfriend, and seized two firearms, one bearing Williams's fingerprint; two boxes of ammunition, both bearing Williams's fingerprint; a large bag of marijuana; and several Ziploc bags bearing Williams's fingerprints. Officers later obtained text messages between Williams and his girlfriend, exchanged on the same day as the shooting, where Williams instructed his girlfriend to "[g]et all that shit out ur house. Now."

While responding to the scene, another officer, who had received the radio report with the witness description of the vehicle leaving the scene, spotted a sedan that matched the description, including the exact license plate. The vehicle was driving away from the shooting location. The officer initiated a traffic stop roughly two blocks away from the shooting location. The individual driving the stopped vehicle, a black male with short hair, was identified as Shaw. While he was being placed into the patrol car, Shaw asked the officer to retrieve his cell phone. When the officer retrieved the phone, he observed that Shaw was receiving an incoming call from someone listed as "Splash." The officer later obtained information from the wireless provider, pursuant to a warrant, for the phone number associated with "Splash" and determined that the phone was in the name of Williams's girlfriend and that geolocation data showed that the phone was accessing cell phone data from towers near the shooting location at the time of the shooting.

A subsequent search of the vehicle revealed the presence of a backpack in the back seat, which contained two canisters of marijuana, bags containing marijuana residue, and a digital scale with marijuana residue on it. The search also uncovered a black canvas bag in the vehicle's trunk. Inside this bag, officers observed seven silver canisters that bore labels stating that the canisters contained specified weights

-4-

of marijuana. Each canister was full. Subsequent laboratory testing revealed that the substance inside the containers was marijuana. Based on the identification of the dispensaries from which the marijuana was purchased and surveillance videos of the purchases, police traced these canisters back to the purchases Boyd and two other individuals made in Colorado. The canvas bag also contained Ziploc bags and a handgun. Later ballistics analysis confirmed that the shell casings at the shooting scene were fired from this handgun. In addition, both Williams and Shaw had been captured on surveillance video eleven days before the shooting in an Ames store examining and expressing interest in purchasing two firearms through a third-party straw man purchaser. The gun used in the shooting and one of the firearms and the ammunition recovered from Williams's girlfriend's apartment were shown being purchased on this surveillance video.

On August 10, the day following the shooting, Shaw sent Williams a text message stating, "Just lmk when you read to link I'm bout to try and go crazy out there." Williams responded "im gone let uk when im ready bro jus know when I come im coming hard so we gone have to go all in this shit def for te long haul bro." Williams also exchanged text messages with another woman, discussing the fact that he was on his way to Chicago. The woman replied that there had been a newspaper article about the incident that identified Williams as the shooter and implied that Shaw's only involvement had been as a driver. This woman expressed her view that "I really feel like he told on baby." Williams and Shaw exchanged text messages again the following day. Williams stated, in part "Wat I hear play by play we in this shit together so I will never leave u in the dark." Shaw responded that "we def in this shit together I'm certified in it and out of jail keep yo head up too." Williams was eventually apprehended in Chicago. While in custody, he was recorded on telephone calls discussing the shooting. In one call, Williams stated that he implicated himself in the shooting by jumping out of the window of his girlfriend's apartment.

Williams was charged with one count of conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C); one count of interference with commerce by robbery (or a Hobbs Act robbery), in violation of 18 U.S.C. § 1951; one count of using and carrying a firearm during and in relation to a drug trafficking offense and/or a crime of violence in violation of 18 U.S.C. § 924(c); and one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Before trial, Williams filed a motion to dismiss the § 924(c) count on the basis that a Hobbs Act robbery is not a crime of violence and thus could not serve as a predicate offense. The district court denied the motion, and the matter proceeded to jury trial.

The jury convicted Williams on all counts. The district court sentenced Williams to 150 months imprisonment for the conspiracy count, 150 months imprisonment for the Hobbs Act robbery count, 120 months imprisonment for the § 924(c) count, and 120 months imprisonment for being a felon in possession of a firearm. The court ordered the sentences for three counts (the conspiracy, Hobbs Act robbery, and felon-in-possession counts) to run concurrently and ordered that the sentence for the § 924(c) count run consecutively for a total term of imprisonment of 270 months. This appeal follows.

II.

Williams first asserts the government presented insufficient evidence to support the jury's verdict as to each count. When reviewing a claim regarding the sufficiency of the evidence supporting a criminal conviction, the Court conducts a de novo review, "viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Matthews, 761 F.3d 891, 893 (8th Cir. 2014) (quoting United States v. Morris, 723 F.3d 934, 938 (8th Cir. 2013)). Reversal for insufficient evidence is warranted only where the Court concludes that "no reasonable

jury could find all the elements beyond a reasonable doubt . . . ." United States v. Wiest, 596 F.3d 906, 910 (8th Cir. 2010).

## A.

Williams argues that his conviction for conspiracy to possess with intent to distribute is not supported by sufficient evidence. Specifically, Williams argues that, while circumstantial evidence may have shown that Williams and Shaw intended to possess the marijuana, the evidence was insufficient to allow a jury to conclude that Williams and Shaw agreed to distribute the substance. We disagree.

"To establish a drug conspiracy, the government must prove the existence of an agreement between two or more persons to violate federal narcotics law." United States v. Smith, 450 F.3d 856, 860 (8th Cir. 2006). Proving that an agreement existed between the parties requires "a showing the defendant was aware of the purposes of the agreement and voluntarily participated in the agreement." Id. In cases charging conspiracy, the evidence is often circumstantial: "[B]ecause the nature of conspiracy entails secrecy, the agreement and members' participation in it must often be established by way of inference from the surrounding circumstances." United States v. Adams, 401 F.3d 886, 894 (8th Cir. 2005) (alteration in original) (quoting United States v. Cabreva, 116 F.3d 1243, 1245 (8th Cir. 1997)). To successfully secure a guilty verdict on a conspiracy charge, "the government need not prove an express agreement." Id. at 893-94. Instead, the government must "only establish a tacit understanding between the parties, and this may be shown wholly through the circumstantial evidence of [the defendant's] actions." Id. at 894 (alteration in original) (internal quotation omitted). And the same holds true for intent to distribute: circumstantial evidence is sufficient to support a conviction. United States v. Haney, 23 F.3d 1413, 1417 (8th Cir. 1994).

-7-

The evidence was sufficient to allow the jury to infer that Williams willingly and voluntarily entered into an agreement with Shaw to possess marijuana with the intent to distribute it. Taken together, the evidence paints a compelling picture of Williams's and Shaw's tacit agreement to procure marijuana from Boyd for the purpose of selling it to other individuals. The number of canisters of marijuana, the drug packaging materials, the presence of firearms, and the shooting of Boyd are particularly probative of Williams's and Shaw's intent to distribute. And our Court has previously recognized that evidence similar to that presented to the jury here may be probative of an intent to distribute. See, e.g., id. at 1417 (stating that "the presence of a firearm is one factor from which a jury may infer an intent to distribute a controlled substance"); United States v. Schmidt, 662 F.2d 498, 504-05 (8th Cir. 1981) (explaining that packaging materials to aid in apparent distribution showed evidence of plan or intent to distribute). Ample additional evidence supports the jury's conclusion that Williams and Shaw had an agreement to procure and distribute marijuana, including the communications between Williams and Boyd and Williams and Shaw; that Williams urged his girlfriend to immediately rid the apartment of incriminating items; that Williams and Shaw communicated following the robbery where both expressed that they were "in this together" and discussed when they would be ready to meet up again; Williams's flight following the robbery, which provides a permissible basis to infer guilt, see United States v. Hankins, 931 F.2d 1256, 1261 (8th Cir. 1991); and in recorded phone conversations from jail, Williams made statements implicating himself in the crime.

Based on the foregoing, a reasonable jury could find Williams guilty of conspiracy to distribute or possess with intent to distribute beyond a reasonable doubt. We affirm Williams's conspiracy conviction.

B.

Williams next asserts that the government did not present sufficient evidence to support his conviction for a Hobbs Act robbery because, at most, the evidence showed that Boyd was shot, that Williams fled the scene, and that Shaw was later detained with drugs in his vehicle. Williams asserts that this evidence was insufficient to show that he took the marijuana from Boyd, leaving the jury unable to conclude beyond a reasonable doubt that Williams committed a robbery. Again, we disagree.

"A person commits a Hobbs Act robbery if he 'in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do.'" United States v. Chaplain, 864 F.3d 853, 857 (8th Cir. 2017) (quoting 18 U.S.C. § 1951(a)). Robbery is "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession . . . ." 18 U.S.C. § 1951(b)(1). Thus, to convict Williams of a Hobbs Act robbery, the government was required to prove that Williams robbed Boyd, the robbery involved marijuana, and Williams's actions obstructed, delayed, or affected commerce in some degree. Williams challenges only the sufficiency of the evidence to prove he actually took the marijuana from Boyd; he does not challenge any other element.

The evidence is sufficient to support the jury's conclusion, beyond a reasonable doubt, that Williams took the marijuana from Boyd. The government introduced significant circumstantial evidence that Williams and Boyd arranged a drug transaction; that Williams and Shaw communicated before the transaction and traveled together to the location in possession of a firearm; that Boyd sustained gunshot wounds during the transaction; that the marijuana ended up in the trunk of

the car—that Shaw and Williams had arrived in together—Shaw drove away from the scene; and that Williams fled the scene following the incident. This evidence provided the jury a sufficient basis to draw the inferences that Williams arranged the drug transaction, brought a firearm to the meeting, shot Boyd, took the marijuana and stashed it in the trunk of the vehicle he arrived in before fleeing on foot as the scene became more chaotic. Based on these permissible inferences, the jury's verdict is supported by sufficient evidence. We affirm Williams's Hobbs Act robbery conviction.

C.

Finally, Williams asserts that neither his conviction for using and carrying a firearm during and in relation to a drug-trafficking offense or a crime of violence nor his conviction for being a felon in possession of a firearm were supported by sufficient evidence. As to the use or carrying of a firearm charge, Williams asserts that the government failed to show that Williams was the shooter or that he possessed a firearm during the shooting. Because the felon-in-possession-of-a-firearm charge rested on the possession of the firearm used to shoot Boyd, Williams asserts that his conviction on the felon-in-possession count is similarly unsupported by sufficient evidence. Williams's arguments are without merit.

To sustain a conviction for using or carrying a firearm during or in relation to a drug trafficking offense or a crime of violence, the government had to prove that Williams committed conspiracy to distribute or possess with intent to distribute marijuana (a drug trafficking crime) or a Hobbs Act robbery (a crime of violence) and that he knowingly used or carried a firearm during or in relation to either of theses offenses. See 18 U.S.C. § 924(c). As discussed in Parts II.A and II.B, supra, the evidence supported the jury's guilty verdict for the conspiracy and Hobbs Act robbery counts. As to the § 924(c) conviction, Williams challenges only the jury's conclusion that he used or carried a firearm.

-10-

A conviction for a felon-in-possession-of-a-firearm charge requires the government to prove that the defendant has "a prior felony conviction, that he knowingly possessed a firearm, and that the firearm . . . affected interstate commerce." United States v. Lofton, 557 F.3d 594, 596 (8th Cir. 2009). The only element at issue at trial was whether Williams possessed the firearm; the parties stipulated that Williams had a prior felony conviction and that the subject firearm affected interstate commerce. To prove possession, the government may introduce circumstantial evidence that requires the jury to infer that the defendant possessed a firearm; the government need not provide evidence of direct observation of the defendant with the firearm. See United States v. Light, 406 F.3d 995, 997-98 (8th Cir. 2005).

The evidence was sufficient to allow the jury to infer that Williams possessed the firearm during the incident so as to sustain both verdicts. The evidence included witness statements that an African American man with long hair—which was consistent with Williams's appearance at the time of the incident—was seen holding a gun and fleeing the scene; witness statements regarding the very different appearance of Shaw, who "had like no hair"; testimony that Boyd identified his shooter by a nickname starting with the letter "S"; evidence of Williams's nickname "Splash"; Williams's admission on a jail phone call that he jumped out of the window of his girlfriend's apartment, thereby implicating himself in the crime; Williams's flight to Chicago following the incident; and surveillance video from the store where the firearm used in the shooting and the firearm recovered from Williams's girlfriend's apartment were purchased, which captured Williams examining the firearms. Based on this evidence, we conclude that the government presented sufficient evidence to allow the jury to conclude, beyond a reasonable doubt, that Williams was the party who possessed and used the firearm during the robbery of Boyd. We affirm both Williams's § 924(c) and felon-in-possession convictions.

-11-

Williams next argues that, independent of his challenges to the sufficiency of the evidence, his conviction under 18 U.S.C. § 924(c) should be vacated because a Hobbs Act robbery is not a crime of violence, as defined in § 924(c)(3), and cannot serve as a predicate offense to a § 924(c) charge, either under the § 924(c)(3)(A) force clause or the § 924(c)(3)(B) residual clause, the latter of which Williams asserts is unconstitutionally vague.

Section 924(c)(1)(A) provides that

> any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall [be guilty of a separate offense.]

Under the plain language of § 924(c) and as charged in the indictment, Williams could be found guilty of a § 924(c) offense if he used or carried a firearm during or in relation to a crime of violence **or** a drug trafficking offense. Because we affirm Williams's conviction for conspiracy to possess with intent to distribute, which is undisputedly a drug-trafficking offense, the predicate offense necessitated by § 924(c) is satisfied without regard to whether a Hobbs Act robbery qualifies as a crime of violence.

Williams himself acknowledges as much, explicitly conceding in his brief and at oral argument that his argument is predicated on a reversal of the drug conspiracy conviction. Appellant's Br., at 21 ("If this Court determines that sufficient evidence

exists to support the Hobbs Act robbery conviction and the § 924(c) conviction but vacates the conspiracy to possess with intent to distribute conviction for insufficient evidence, Williams asserts that his § 924(c) conviction must be vacated because Hobbs Act robbery is not a crime of violence under § 924(c).").[2]

IV.

Williams finally asserts that the district court sentenced him to a term of imprisonment that exceeds the statutory maximum for his conspiracy conviction and that his entire sentence must be vacated and he must be re-sentenced on all counts. The district court sentenced Williams to 150 months imprisonment on the conspiracy count, which the parties agree exceeds the 60-month statutory maximum based upon the quantity of marijuana involved. Williams was charged with conspiracy under 21 U.S.C. §§ 846 and 841(b)(1)(C), which carries a statutory maximum of 20 years imprisonment. However, as shown at trial and in the Presentence Investigation Report, the quantity of marijuana involved in the offense resulted in the penalty appropriately falling under § 841(b)(1)(D), which carries a statutory maximum of 60 months imprisonment. Williams asserts that this sentencing error mandates that his entire sentence be vacated and the matter remanded for re-sentencing.

Williams did not raise any objection before the district court regarding this sentencing error; we thus review this argument for plain error. See United States v. Campbell, 764 F.3d 874, 878 (8th Cir. 2014). To prevail on a claim of plain error, a

---

[2]Additionally, we note that other panels of this Court have explicitly held that a Hobbs Act robbery is a crime of violence under § 924(c)(3)(A). See Diaz v. United States, 863 F.3d 781, 783-84 (8th Cir. 2017); United States v. House, 825 F.3d 381, 387 (8th Cir. 2016). And because other panels of our Court have held that a Hobbs Act robbery is a crime of violence under the § 924(c)(3)(A) force clause, any argument regarding the constitutionality of the § 924(c)(3)(B) residual clause would have no bearing on the classification of a Hobbs Act robbery as a crime of violence.

defendant "must establish (1) error, (2) that the error was plain, and (3) that the error affected [his] substantial rights." United States v. Maynie, 257 F.3d 908, 918 (8th Cir. 2001). A defendant's substantial rights are affected where "the error prejudicially influenced the outcome of the district court proceedings." Id. at 919 (internal quotation marks omitted). In the context of a sentencing error, "the defendant must show a 'reasonable probability,' based on the appellate record as a whole, that but for the error he would have received a more favorable sentence." United States v. Pirani, 406 F.3d 543, 552 (8th Cir. 2005). If the defendant successfully establishes these three requirements, "we may notice the error but only if it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Maynie, 257 F.3d at 918 (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)).

The government concedes that the district court indeed committed plain sentencing error but asserts that Williams cannot show the requisite prejudice to vacate his sentence because, regardless of the error, Williams would have received the same total sentence. The district court sentenced Williams to 150 months imprisonment for the Hobbs Act robbery, with the sentence running concurrently with the conspiracy sentence. Thus, the government argues, Williams's total sentence would not be reduced even if he were sentenced to the appropriate statutory maximum for the conspiracy conviction. Williams asserts that the sentencing-packaging doctrine requires that, regardless of his concurrent sentence of the same length, he must be re-sentenced. "Under the sentencing package doctrine, we 'may vacate the entire sentence on all counts so that, on remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a).'" United States v. McArthur, 850 F.3d 925, 943 (8th Cir. 2017) (quoting Greenlaw v. United States, 554 U.S. 237, 253 (2008)). The sentencing-package doctrine is often seen "in cases involving 'multicount indictments and a successful attack by a defendant on some but not all of the counts of conviction.'" Id. (quoting Greenlaw, 554 U.S. at 253).

-14-

This Court has previously held that, if the sentence for one count exceeds the statutory maximum for that count, remand and re-sentencing is unnecessary where the same sentence could be lawfully imposed on another count. United States v. Bossany, 678 F.3d 603, 606-07 (8th Cir. 2012). In Bossany, the Court considered the defendant's argument that, under a plain error standard of review, his 90-month sentence for conspiracy exceeded the 60-month statutory maximum, requiring that his sentence be vacated and the matter be remanded for re-sentencing. Id. at 606. The Court determined that, while the error was plain, remand was not appropriate because the defendant had been convicted and sentenced on a separate count for which a 90-month sentence was within the statutory maximum and the defendant failed to show that the sentencing error resulted in his receiving a higher total term of imprisonment than he would have in the absence of the error. Id. at 606-07.

In rejecting the defendant's argument, the Court stated that, "[r]egardless of the error, [defendant] would have been sentenced to 90 months in prison because the court imposed an identical prison term" for a separate offense with a statutory maximum of 240 months. Id. at 606. In concluding that the defendant failed to show how the above-statutory-maximum sentence affected his substantial rights under these circumstances, the Court noted that "an illegal sentence alone does not establish the prejudice necessary for plain error relief," and stated that precedent "require[s the defendant] to show that, absent the error, the court could not have imposed 90 month's imprisonment as his total punishment, which of course, he cannot do since the court legally imposed that sentence on another count." Id. at 606-07. Just as the defendant in Bossany could not show that, but for the sentencing error, the district court could not have imposed the same total punishment, Williams cannot show that the district court could not have sentenced him to the same total punishment because the district court "legally imposed that sentence on a separate count." See id. at 607.

After careful review, we do not conclude that remand is necessary to allow the district court to "reconfigure the sentencing plan to ensure that it remains adequate

-15-

to satisfy the [§ 3553(a) sentencing factors.]" McArthur, 850 F.3d at 943 (quoting Greenlaw, 554 U.S. at 253). The district court sentenced Williams at the top of the guidelines range and explicitly noted during sentencing that the nature of the offenses warranted a top-of-the-guidelines-range sentence, stating "I have considered the seriousness of these offenses. These are exceedingly serious offenses because of the effort gone through to acquire weapons and the violence that miraculously didn't result in death." Sent. Tr. at 6. Remanding to allow the district court to reconsider the § 3553(a) factors is unnecessary; the district court's stated reasons for imposing the specific sentence hold true, even accounting for the sentencing error. There is no indication that the district court would have imposed a different sentence for either of the two other counts for which Williams received a 150-month sentence or that the district court's evaluation of the § 3553(a) factors would have been different in light of the correct statutory maximum for the conspiracy count. Williams has failed to demonstrate a reasonable probability that he would have received a more favorable sentence, accounting for the correct statutory maximum for the conspiracy count. We affirm Williams's sentence.

V.

For the foregoing reasons, we affirm Williams's convictions and sentence.

_____