# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2753

_____

United States of America,

*Plaintiff - Appellee,*

v.

Ampelio Hernandez,

*Defendant - Appellant.*

_____

No. 17-2754

_____

United States of America,

*Plaintiff - Appellee,*

v.

Oscar Espinoza Lopez,

*Defendant - Appellant.*

_____

No. 17-2755

_____

United States of America,

*Plaintiff - Appellee,*

v.

Raymundo Moreno Lopez, also known as Brother,

*Defendant - Appellant.*

_____

Appeals from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 27, 2018
Filed: March 29, 2019

_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Ampelio Hernandez and two brothers, Oscar Espinoza Lopez and Raymundo Moreno Lopez, of conspiracy to distribute methamphetamine. The jury also convicted the Lopez defendants of substantive drug trafficking and firearms offenses, and each Lopez brother pleaded guilty to two counts of fraudulently using a Social Security number. The district court[1] sentenced the defendants to terms of imprisonment. All three appeal their convictions, and Moreno Lopez challenges his sentence on the two counts of Social Security fraud. We affirm.

_____

[1] The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

## I.

In August 2013, the Central Arkansas Drug Task Force learned from a confidential source that Espinoza Lopez and Moreno Lopez were selling methamphetamine in the area around Searcy, Arkansas. The Task Force, working with the Drug Enforcement Administration, arranged to make controlled purchases of methamphetamine from the two suspects through cooperating informants. Between August 2013 and April 2014, the Task Force acquired 242 grams of methamphetamine via controlled purchases from the Lopez defendants. The Task Force also seized 109 more grams by arresting and searching two customers of the Lopez defendants. From October to December 2014, the Task Force gathered more evidence by intercepting telephone calls and text messages from Espinoza Lopez's telephone pursuant to a court-authorized wiretap.

A grand jury charged the Lopez brothers and Hernandez with several drug trafficking charges on September 2, 2015, but the investigation continued. The Task Force made a controlled purchase of 28.09 grams of methamphetamine from Moreno Lopez on September 9, 2015. On September 14, investigators executed a search warrant at Moreno Lopez's residence and seized 31.04 grams of methamphetamine and drug paraphernalia. Ten days later, the Task Force searched a storage shed used by Espinoza Lopez and seized evidence relating to drug trafficking. During the investigation, the government also learned that Espinoza Lopez and Moreno Lopez had falsely represented Social Security numbers to their employer and on an application to rent furniture.

The three defendants eventually were tried on a superseding indictment that alleged a conspiracy to distribute methamphetamine that began "in or about June 2013" and continued through "on or about September 1, 2015." The indictment also included substantive drug trafficking counts and firearms counts against the Lopez

defendants. A jury found the defendants guilty on all charges, and the district court imposed sentences.

## II.

Espinoza Lopez and Moreno Lopez first argue that the district court caused a constructive amendment of the indictment when it allowed evidence of drug trafficking activity during September 2015. The indictment charged a conspiracy that continued "through on or about September 1, 2015," and the Lopez defendants contend that evidence of conduct after September 1 allowed the jury to convict them of an uncharged offense. Alternatively, they assert that the disputed evidence resulted in a prejudicial variance from the allegations in the indictment.

We reject this contention because events in September 2015 were within the scope of the charged conspiracy. An allegation that the conspiracy continued through "on or about September 1, 2015" encompassed events that occurred "reasonably near" September 1. *United States v. Wallace*, 713 F.3d 422, 428 (8th Cir. 2013). Conspiratorial acts within September 2015 qualify as occurring reasonably near the beginning of the month. *See United States v. Nersesian*, 824 F.2d 1294, 1323 (2d Cir. 1987) (no material variance where indictment alleged "on or about June 1984" and offense occurred in July or early August); *United States v. Leibowitz*, 857 F.2d 373, 379 (7th Cir. 1988) (no variance where offense occurred within twenty-one days of date alleged); *United States v. Harris*, 344 F.3d 803, 804-05 (8th Cir. 2003) (events within seven days were reasonably near to date alleged).

The Lopez defendants next complain that there was insufficient evidence to support their convictions for conspiracy to traffic 500 grams of methamphetamine. They argue that only 352.2119 grams of methamphetamine were seized, and that the jury's finding of 500 grams must have been the product of "speculation and conjecture."

-4-

The sufficiency argument understates the amount of seized methamphetamine. Espinoza Lopez and Moreno Lopez concede that over 352 grams of methamphetamine were seized before September 1, 2015, through controlled buys and seizures after the arrests of known customers. Investigators seized another 59 grams during September 2015; for the reasons discussed, a reasonable jury could attribute this amount to the charged conspiracy. With a total of 411 grams of seized methamphetamine, there was ample evidence for a reasonable jury to infer that the entire conspiracy involved the distribution of more than 500 grams. The government introduced telephone messages and text messages between Espinoza Lopez and his co-conspirators that detailed other drug trafficking activity. For example, in addition to the methamphetamine seized during one customer's arrest in December 2014, the government presented telephone calls from October 2014 concerning a proposed sale of two ounces of methamphetamine to the same customer. Intercepted messages between Espinoza Lopez and another customer documented a series of methamphetamine deliveries totaling over eleven ounces. The evidence also included intercepted communications from which a jury could infer that the Lopez brothers purchased multiple ounces or pounds of methamphetamine from their suppliers. In light of this evidence, a jury reasonably could have concluded that a conspiracy lasting more than twenty-seven months involved the distribution of at least ninety grams of methamphetamine that was not seized. There was thus sufficient evidence to support the verdicts.

Hernandez's sole argument on appeal is that there was insufficient evidence to support his conviction for conspiracy to distribute methamphetamine. He acknowledges that Espinoza Lopez and Moreno Lopez were members of a drug trafficking conspiracy, but insists that no reasonable jury could have found that he was involved. The government relied in part on an expert's interpretation of text messages and telephone calls between Hernandez and Espinoza Lopez, but Hernandez contends that these communications were not inculpatory because they made no express reference to methamphetamine.

-5-

Viewing the evidence in the light most favorable to the verdict, there was sufficient evidence for a jury to find that Hernandez was a knowing and voluntary participant in the methamphetamine conspiracy. Phone calls and text messages intercepted between October and December 2014 reveal an ongoing business relationship between Hernandez and the Lopez defendants, with Hernandez supplying Espinoza Lopez with "work" or "tires" and asking him for "paper" in return with which to pay suppliers who were "putting pressure" on him. An expert witness opined that "work" and "tires" were code words for drugs, and "paper" referred to money. In one prominent example, Hernandez called Espinoza Lopez in November 2014 and arranged to sell him methamphetamine worth over $12,000. The evidence was sufficient for a reasonable jury to find that Hernandez was a member of the conspiracy.

## III.

Espinoza Lopez and Moreno Lopez also challenge their convictions under 18 U.S.C. § 924(c) for possessing a firearm in furtherance of a drug trafficking offense. They first contend that the jury instructions constructively amended the charges against them, because both counts of the indictment listed the predicate drug offense as "possession with intent to distribute methamphetamine," but the jury instructions specified "distribution of methamphetamine." They did not raise this objection in the district court, so we review only for plain error. *See United States v. Olano*, 507 U.S. 725 (1993).

There was no obvious error in the jury instructions on this point. Although distribution and possession with intent to distribute typically are distinct offenses with different elements, the offenses merge "where the distribution itself is the sole evidence of possession." *United States v. Gore*, 154 F.3d 34, 45 (2d Cir. 1998); *see also United States v. Sepulveda*, 102 F.3d 1313, 1317 (1st Cir. 1996). In that scenario, each offense does not require proof of a fact that the other does not, so

substituting one offense for the other does not amend the charge. *Gore*, 154 F.3d at 46.

This case presents the merger scenario. The § 924(c) charge against Espinoza Lopez was based on a controlled purchase of methamphetamine from the defendant during which he possessed a firearm. The § 924(c) charge against Moreno Lopez arose from a purchase of methamphetamine from the Lopez defendants while they sat in a truck with firearms nearby. In both instances, distribution and possession with intent to distribute merged into a single offense, so the shift in language between the indictment and the jury instructions did not amend the charge.

Espinoza Lopez also argues that because the indictment charged him and Moreno Lopez with violating § 924(c) in different counts on different dates, the court should have used two separate instructions to define the elements of a § 924(c) violation. The jury instruction, however, defined the elements of the crime "as charged in counts 4 and 9 of the indictment," and the verdict form for each count specified the date of the charge. Espinoza Lopez was charged in Count Four; the verdict form specified that the date of the charged offense was August 27, 2013, and asked for a verdict on whether Espinoza Lopez committed the offense on that date. There is no reasonable likelihood that the jury answered a different question about the separate charge in Count Nine against Moreno Lopez from November 21, 2013.

The Lopez defendants also contend that there was insufficient evidence to convict them of possessing a firearm in furtherance of a drug trafficking crime. To convict under § 924(c), the jury must find "a nexus" between the defendant's possession of the firearm and the drug offense. *United States v. Crumley*, 528 F.3d 1053, 1067 (8th Cir. 2008). Mere possession of drugs and a firearm is not sufficient, but "the jury may infer that the firearm was used in furtherance of a drug crime when it is kept in close proximity to the drugs, it is quickly accessible, and there is expert testimony regarding the use of firearms in connection with drug trafficking." *United*

*States v. Close*, 518 F.3d 617, 619 (8th Cir. 2008). Evidence is sufficient if a rational jury could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Nguyen*, 758 F.3d 1024, 1029 (8th Cir. 2014).

On the charge against Espinoza Lopez, the government presented evidence that a cooperating witness purchased an ounce of methamphetamine from the defendant at a picnic table near a trailer owned by the Lopez defendants. A surveillance officer who took a photograph of Espinoza Lopez during the transaction testified that he could see a handgun, with a black handle and silver slide, sticking out of Espinoza Lopez's waistband in the back. On cross-examination, the officer acknowledged that there was "just a little butt" of a gun "hanging out," and that the officer could not tell from the photograph whether it was a toy gun or a real gun. For his part, the cooperating witness testified that Espinoza Lopez owned a handgun that he kept in his vehicle or camper and "once in while" carried on his person, but the witness did not believe that Espinoza Lopez possessed a gun during the transaction at the picnic table. An expert from the DEA opined based on his experience that drug dealers typically possess firearms to protect their narcotics, money, and assets.

Espinoza Lopez argues that there was insufficient evidence that he possessed a gun during the transaction, because the cooperating witness did not think he carried one, and the photograph does not show a gun in his waistband, or at least does not establish that he possessed a real firearm rather than a toy gun. These arguments were aired before the jury, and we conclude that the evidence was sufficient to support the verdict. A rational jury could have accepted the testimony of the surveillance officer that the photograph showed a gun in Espinoza Lopez's waistband and could have concluded that the cooperating witness either did not see the gun or did not remember it. Although the officer said that he could not tell from the photograph whether the gun was real or fake, the jury could infer from other evidence that Espinoza Lopez carried a firearm. The cooperating witness testified that the defendant owned a

handgun, and the jury rationally could conclude that a drug dealer seeking to protect his drugs and money would carry a firearm rather than a toy.

The charge against Moreno Lopez was supported by testimony from a cooperating witness who met the Lopez defendants at their truck in a parking lot and purchased another ounce of methamphetamine. The witness testified that he observed two pistols in the console between the Lopez brothers during the drug transaction. The witness was impeached by a previous inconsistent statement that the guns were in the defendants' laps, and he acknowledged uncertainty about the precise location of the guns and whether there were two firearms or only one. But he was definitive with respect to Moreno Lopez that "there was a handgun right there in reach by his lap," and the witness thought there was a second firearm. Possession of a firearm may be joint with another person, and it may be constructive if a defendant does not have physical possession but has power and intent to exercise dominion and control over the object. *See United States v. Ali*, 63 F.3d 710, 715-17 (8th Cir. 1995). Given the testimony of the cooperating witness and the expert evidence about the nexus between firearms and drug trafficking, the jury reasonably could have found that Moreno Lopez possessed a firearm in the truck, and that he did so in furtherance of a drug trafficking offense.

IV.

Finally, Moreno Lopez challenges his sentence of 151 months' imprisonment on each of the two counts of fraudulently using a Social Security number. He points out that the statutory maximum penalty under 42 U.S.C. § 408(a)(7)(B) for each fraud charge is sixty months' imprisonment. The district court sentenced Moreno Lopez to 151 months' imprisonment on each of twelve counts of conviction, including the Social Security fraud charges, all to be served concurrently. The court also imposed a sixty-month consecutive sentence for the violation of 18 U.S.C. § 924(c). Moreno Lopez failed to object to imposing a term of greater than sixty months on the two

convictions under Title 42, so we review those sentences under the plain-error standard.

The government concedes that there was an obvious error in imposing a sentence that exceeds sixty months, but to obtain relief, Moreno Lopez also must establish that the error affected his substantial rights. Under circuit precedent, "an illegal sentence alone does not establish the prejudice necessary for plain error relief." *United States v. Bossany*, 678 F.3d 603, 606-07 (8th Cir. 2012). Where the district court would have imposed the same sentence even without the error, a defendant is not prejudiced by the mistake. *Id.*; *see also United States v. Williams*, 910 F.3d 1084, 1094-95 (8th Cir. 2018). Here, the district court imposed the same concurrent sentence of 151 months on ten other counts, so the erroneous sentences for Social Security fraud are unlikely to have any effect on the term that Moreno Lopez serves. Under those circumstances, Moreno Lopez cannot establish prejudice from the error, and he is not entitled to relief on plain-error review.

\*     \*     \*

For the foregoing reasons, the judgments of the district court are affirmed.

———————————————